IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PABLO REYES,

       Plaintiff,

v.                                                                CIV 00-1569 MV/KBM

LARRY G. MASSANARI,[1]
Commissioner of Social Security,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's Motion to Reverse or Remand. *Doc. 8.* The single issue presented by this case is whether the Administrative Law Judge ("ALJ") erred in relying solely on the grids instead of vocational expert testimony in finding Plaintiff not disabled. Because I conclude that the ALJ's reliance on the grids was erroneous, a remand is warranted.

When Plaintiff underwent a consultative examination for his complaints of back pain, Dr. Eva Pacheco noted that Plaintiff's physical examination was entirely normal and did not find that he had any exertional restrictions. She did, however, note possible "preexisting mental retardation or intellectual deficits" and recommended a psychiatric evaluation, intelligence and drug testing "to see if this patient is delayed with respect to his thought process." *Record* at 123-24. She added:

---

[1] On March 29, 2001, Larry G. Massanari became the Acting Commissioner of Social Security. In accordance with FED. R. CIV. P. 25(d)(1), Mr. Massanari is substituted for William A. Halter as the Defendant in this action.

> Given this finding, I would suggest Mr. Reyes not be placed in a position
> where he has to think quickly. Patient has somewhat of a focused view
> with simple thought processes that complex situations may be unsafe for
> him. Patient would do best in a supervised type of environment where he
> has time to work at a slow pace with simple tasks.

*Id.* at 124. Plaintiff was subsequently tested and Dr. Pacheco's suspicions confirmed as Plaintiff

was found to score in the borderline intelligence range. Dr. Richard Reed, who administered the

intelligence tests, found Plaintiff's "awareness and understanding of social norms and conventions

is poor, as is his general fund of information available to him;" that his "scores fall into the

mentally retarded range." *Record* at 132. Dr. Reed also noted that Plaintiff appeared to be

"mildly depressed." *Id.*

The ALJ found that Plaintiff has symptom-producing medical problems. However, the

ALJ discredited Plaintiff's allegations of pain, physical symptoms and physical limitations as

"exaggerated" and found that he could perform "light work." The ALJ did not find the mental

impairment sufficiently "severe" such that it met a listing. Although a vocational expert testified,

the ALJ relied exclusively on the grids in step five to find that Plaintiff is not disabled.

As I understand it, Defendant argues that because Plaintiff had worked in the past and did

not mention his mental impairment on his application or at the hearing, the ALJ was not required

to consider the impairment in the residual functional capacity determination and reliance solely on

the grids was proper. This argument ignores the ALJ's findings.

The ALJ noted the intelligence test findings and "giving the claimant the benefit of the

doubt" found "the combination of his [mental] impairments *has more than a minimal effect* on

his ability to work." *Id.* at 18 (emphasis added). Although the mental impairment did not meet a

listing and the ALJ specifically found Plaintiff did "establish . . . limited intellect." *Id.* The ALJ

2

then found that Plaintiff's "borderline intellectual function" would not limit his "residual functional capacity for at least simple repetitive unskilled light work on a sustained basis." *Id.* at 18-19.

The ALJ concluded on the PRT form that Plaintiff's mental limitations "seldom" cause "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner," *id.* at 22, and cited Dr. Reed's report as support for the conclusion that Plaintiff's intellectual capacity does not limit his ability to perform unskilled work, *id.* at 19 (citing exhibit 9F). Nowhere, however, does Dr. Reed's report imply or draw that conclusion. Nor does Dr. Pacheco's. *See Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996) ("The record must contain substantial competent evidence to support the conclusions reached on the PRT form [and] if the ALJ prepares the form himself, he must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form.").

Thus, the ALJ's conclusion that Plaintiff's intellectual capacity poses no limitations on Plaintiff's ability to perform unskilled light work is not based on substantial evidence and the ALJ erred in relying exclusively on the grids. *Compare Watkins v. Chater,* 82 F.3d 427, 1996 WL 165300 (10th Cir. 1996) (unpublished) (ALJ determined claimant "does not have a mental impairment that significantly limits her ability to perform work activities, stating the reasons for his decision. . . . substantial evidence supports the [ALJ's] decision. Accordingly the [ALJ] was not required to include a mental impairment in the hypothetical situation propounded for the vocation expert's consideration"); *with Lucy v. Chater,* 113 F.3d 905, 908 (8th Cir. 1997) ("The record supports the ALJ's finding that Lucy suffers from borderline intellectual functioning. . . . but later the ALJ stated that Lucy's capacity for the full range of sedentary work has not been significantly compromised by the nonexertional limitations. . . . [B]orderline intellectual function,

3

if supported by the record . . . is a significant nonexertional impairment that must be considered by a vocational expert") *and Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991)  ("The psychological and psychiatric evaluations evidence the claimant's deficiency in concentration and performance in a social setting, and the psychologist to which the administrative law judge referred the claimant indicated that he could not even behave in an emotionally stable manner. . . . Any supposition that claimant could engage in the full range of occupations represented by the applicable grid, therefore, is not supported by substantial evidence.").

Plaintiff advocates a remand for the purpose of conducting another hearing.  Defendant argues, however, that a remand is inappropriate even if the ALJ erred in relying on the grids.  At the hearing, a vocational expert was asked consider Plaintiff's mental impairments.  The vocational expert testified that Plaintiff could perform work as a dishwasher or cleaning restaurants, which exist in significant numbers in the national and local economy.  *See id.* at 57-58.  Put another way, Defendant contends that failure to rely on to vocational expert's testimony was "harmless" and a remand would be an empty exercise.

Defendant cites no clear and controlling authority for that proposition that when an ALJ erroneously relies on the grids and goes no further in the analysis, remand is not necessary if a vocational expert's testimony is consistent with no award of benefits.[2]  Plaintiff does not respond to this argument in his reply.  Although the conservation of resources argument is appealing, this Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

---

[2] I have found no such authority save for black lung cases in other circuits.  *See Grimmett v. Arch of West Virginia/Apogee Coal Co.,* 246 F.3d 664, 2001 WL 324618 (4th Cir. 4/4/01) (unpublished) (citing Seventh Circuit black lung cases for the propositions that "'[i]f the outcome of a remand is foreordained, we need not order one'" and "'[w]hile the regulations do not specifically provide us with grounds to hold an ALJ's error harmless, we have not been reluctant to rely on harmless error when a remand would be futile . . . and costly'").

*See Casias v. Sec'y of Health & Hum. Serv.,* 933 F.2d 799, 800 (10th Cir. 1991).

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion to remand be granted and the matter remanded for further proceedings.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE